19-1298 Gun Owners of America, Inc. et al. v. Merrick v. Garland et al. Oral Argument, 20 minutes per side. Mr. Olson for the plaintiff appellants and the move-in. Good afternoon, Your Honor. May it please the Court, Rob Olson on behalf of plaintiff appellants, and I'd like to reserve three minutes for rebuttal if I could. In 2018, Justice Gorsuch wrote for the Court in Wisconsin Central that Congress alone has the constitutional authority to revise statutes in light of new social problems. The very next year, Justice Gorsuch wrote for different justices, also a majority of the Court in U.S. v. Davis, only the people's elected representatives in Congress have the power to write new federal criminal laws. Between those two cases, he had every single then, still now, justice on the Supreme Court. The point is that these are not controversial principles, that ATF does not get to decide who goes to prison, who gets a 10-year prison sentence, who has a machine gun. That is... Are we dealing with a criminal law or are we dealing with a legislative rule? We're dealing with a criminal law in 922-0 that says if you own a machine gun, you go to federal prison. It incorporates a statute from the National Fire... Are you challenging the rule, though? We're challenging the rule, yes, Your Honor. Okay. So that these are not controversial principles, that ATF does not get to decide who goes to prison. However, in this case, ATF... Would the interpretation here apply to a prosecution for acts that occurred prior to the rule? They say that it does. Is this... Are you getting at a legislative... Is this a perspective-only rule or would it have any retroactive application? The final rule claims that... The final rule goes both ways. The final rule says that these things are now machine guns as of the date of the final rule. They also say that they are going to exercise prosecutorial discretion and not charge people who possess these things prior to the date of the final rule. Counsel, how is this situation different than Congress writing the drug laws and then the agency promulgating the schedules determining which drugs go on which schedules and then, of course, there are penalties that apply based on the schedule of a particular category of policy? Why is this different? There are cases like Babbitt and O'Hagan where... And like the one you mentioned where Congress has said, Securities and Exchange Commission and O'Hagan. These are financial crime. There's a crime. You figure out what constitutes these certain financial crimes. In Babbitt, it was the Department of the Interior and they said it's a crime to take an endangered species. And then Department of the Interior, you figure out what an endangered species is. You figure out what it means to take. There is no delegation like that at all here. Explicit, certainly not. And implicit, not at all either. Doesn't the Gun Control Act prescribe that the ATF shall prescribe rules and regulations as necessary to carry out these provisions of the Gun Control Act? That's exactly what it says. Okay, so Congress did allocate authority to the ATF. It allocated authority to enforce, to carry out, to administer, and enforcement. Those are the key words in the three different... Describe rules and regulations as necessary. To carry out the provisions, to enforce the crimes that Congress... There's a clear delegation of authority here, is there not? There's a clear delegation of authority to enforce the law. What about the word administer, though? You use that word in there. So are you saying that administer the law is not broad enough to encompass this conduct? We're dealing with federal gun control laws, which have licensees, things like that. So you have to have a Form 4473 to purchase a gun. So that would be administer. Come up with the form, come up with the fees, tell FFLs, Federal Firearm Licensees, the type of the schedule of which things go where. In record keeping or something like that, Your Honor? No, I'm going back to my analysis. Firearms. Yeah, sure. There's no, absolutely no delegation in the statute that says it's a crime to own a machine gun, and then ATF, you figure out what firearms and machine guns. Wouldn't it allow, if that was the case, then the FBI has a similar promulgation law, correct? Wouldn't it allow the FBI to interpret Title 18 as expansively as it wanted if it didn't have to follow the language? Well, they're not, I'm, I'm, Mr., I'm not understanding your question. Yeah, it's not a hurtful question. I don't take it. If ATF can expand what the law means, what criminal laws mean, and then prosecute people, wouldn't that allow agencies like the FBI that have very similar promulgation regulations to, in administering the laws, to interpret Title 18 very broadly? As broadly as they want. They could decide who they wanted to go after, criminalize conduct in order to sweep those people up, and then go after them. I mean, the Supreme Court. Can I ask you a few questions about specific language that you highlight in your brief? The single function of the trigger you talk about, it doesn't cause a non-mechanical bump stock to fire automatically more than one shot, correct? Correct. Because each time a shot is fired, the trigger is moving to the rear and moving to the, to the front. It is functioning. So are bump stocks only used primarily on semi-automatic rifles? I suppose you could put one on a fully automatic. I think you would probably result in a malfunction or something, because you, you have the weapon trying to engage in fully automatic fire, and the bump stock permitting some sort of recoil. I, I, I guess it's conceivable, but yes, I think the traditional use is that they would be put on semi-autos only. So if I have a non-mechanical bump stock and I tie a string to the trigger and pull it, how many bullets come out? One round, Your Honor. What about if I do it to a machine gun? You hold the trigger, and you hold the trigger to the rear, it will continue to fire until ammunition is expended or malfunctions or you release the, the string. So a single function of the trigger doesn't cause the gun to fire automatically more than one shot? Not when using a bump stock on a semi-automatic firearm. If I have a bump stock and I just fire from the hip or just fire a couple of rounds into the air, it's not going to work? It's not going to do anything. I have to have it up against my shoulder? And as the final rule acknowledges, bump firing is a, a technique, not something that a bump stock enables. It's just something that a bump stock sort of makes a little perhaps easier or, you know, there's a lot of people that hook their, their finger through their belt loop and are able to bump fire a gun just as well as with a bump stock. It just sort of facilitates that technique, but it doesn't create any new mechanical process with the firearm. What do we do about the word automatically? Automatically, Your Honor, I, that's a good question because ATF takes that word and they use a lot of fluff. They say it's a self-acting, self-regulating mechanism. They take it out of the statute. But the question is not that a weapon fires automatically, it's how it fires automatically. Because even, as we point out in our brief, semi-automatic firearms have automatic operation to them where the bolt comes to the rear, a spent cartridge goes out, the spring forces the bolt closed. And so that is an automatic function and that's, that's something we all know is a semi-automatic. The key in the statute, the key language is by a single function of the trigger. That is how we differentiate between all semi-autos and the ones that are actually machine guns. That's by the, as the Supreme Court says in Staples, when you depress the trigger, the weapon will continue to fire until the trigger is released. So in an Atkins, the spring does it, right? But the trigger is being pulled more than once. Yes, Your Honor. So that's not, so you would say that the Atkins is not a machine gun? I would say that it still has a single function of the trigger for every single round that is being fired. So the case that decided that the Atkins was a machine gun is wrong, in your opinion? In my opinion, yes. And that was an unprecedented, unpublished decision which, which relied on, it was pre-April, pre-Bramski, relied on a form of deference to the agency. So the Atkins accelerator and the auto glove, all of these are not machine guns under your ... No, the Atkins, I would say the Atkins is not a machine gun. And there are other straw men that the ATF throws into their brief and says all of these things that we all know to be machine guns wouldn't be machine guns under plaintiff's interpretation. So specifically, the auto glove, is that a machine gun or not? I don't know that I'm prepared to take a position on that. I think that those ... Your side does not know. Okay. Well, those devices are, they have a trigger that is replaced with another trigger. It's ATF's trigger replacement theory. And, and I think that makes some sense. That if you take ... So, so you would say that, that is a machine gun then? I don't know that I'm familiar enough with the operation of that device. How about the LV-15 trigger reset device? Is that a, like a positive reset type of trigger? I'm asking you, do you have a position? Is that a machine gun or not? All I can tell you is that the devices that, that they cited to in their brief, each one is based on this trigger replacement theory where you, you replace the standard trigger with something else, with a paddle, with a switch, with a button. And I would concede, if you do that, if there is something else that becomes the trigger of the firearm, then, then that, and if it, that requires a single function, like holding down a button or flipping a switch and walking away or something, and the weapon continues to fire, that that would be multiple rounds by a single function. You have to walk away if you flipped a switch to make it a machine gun? Well, you could stand, stand there. You could stand there holding the gun, correct? Sure. Isn't, isn't the key point though that we don't need to decide those weapons either way because the textual basis for those weapons to be covered is the trigger has changed from the actual trigger on the gun to the button or anything else. So, if I'm pushing down the button, that's no different than holding a machine gun like this. Absolutely. The focus there is still on the functioning of the trigger. The government's position in this case is the trigger is still the actual trigger. Yeah, I, I believe so. I haven't seen. I haven't seen other things that trigger. It just, we don't even need to decide that. Those weapons aren't even before us and they're easily distinguishable because it's a different trigger. I believe so. I, I would like to return to your statements about there not being a delegation in this case. Tell me specifically how the language that governs this case is different from the Chevron, the O'Hagan, the Babbitt delegations. Sure. In, in Babbitt, for example, they, the Congress said it is a crime to take an endangered species and they told the Department of the Interior, you come up with a list of endangered species that it's a crime to take. You come up with a definition for what it means to take an endangered species. O'Hagan. That's the key, isn't it? You come up with a definition of what it means to take and then the discussion and the controversy is over what harm or taking means. How is that any different from this case? Because Congress gave that agency some authority to weigh in on what it means to take and what it means to be an endangered species. There's nothing in the Gun Control Act or the National Firearms Act that gives ATF the authority to decide that certain weapons are machine guns. Do you have to get there? I mean, is, even if Chevron applies, even if they have a delegated authority, we wouldn't get to pass Chevron step one unless the statute were ambiguous, right? And I guess I'm wondering how quickly the Supreme Court has instructed us to move to ambiguity. In other words, when I read, for example, Kaiser, which is admittedly in our case, but it's the most recent case from the Supreme Court, they said you have to deploy every tool in your belt before you call something ambiguous. So I guess I'm wondering whether all of that is something we don't need to worry about because I'm not sure whether the statute is ambiguous. Well, it looks like you're reading right off of my briefing paper, is Kaiser is the case that I was going to quote from, that before concluding a rule is genuinely ambiguous, the court must exhaust all the traditional tools of construction only when its toolkit is empty. Do you move on to ambiguity? The district court below spent about a paragraph and a half looking at, automatically, about a paragraph and a half looking at single function of the trigger and the only canon of construction that was used was basically looking at some dictionary definitions, taking automatically out of the statute, taking function out of the statute, and looking at the definition of those words out of context, out of the statutory context, and throwing up his hands and saying I have no idea what these statutes mean. How does the rule of lenity play into all this? I thought the rule was that if a criminal statute is ambiguous, you construe it in favor of the defendant's position. So how does that play in when you have Chevron? I think the government, perhaps, would say that Chevron applies if it's ambiguous, but it seems like the common law rule would be if it's ambiguous, the rule of lenity would apply. I don't think the government has a consistent position on any of this, Your Honor. I think they're kind of dancing around the thorny issues here. And obviously, we do think that the rule of lenity applies. We also briefed the constitutional doctrine of void for vagueness that if you've got this statute that's been hanging around for 80 years and courts have applied it and sent people to prison, and now ATF can't tell you what it means, and they write a final rule where they get to the end and they say, just in case we didn't cover the thing we were trying to cover, by the way, a bump stock is a machine, and that's the way the final rule, the Code of Federal Regulations now reads. Doesn't the Supreme Court in Babbitt reject that rule, that the rule of lenity would not apply to challenges involving administrative regulations? I mean, I can read you the quote from the Supreme Court. No, I have the quote, Your Honor. Don't they say that? They say that they've never suggested the rule of lenity should apply. They don't say that they've ever said that it cannot apply. Justice Scalia and Thomas, in 2014, called it a drive-by footnote, and they point out that the Court has never since or before... Sometimes a dicta by the Supreme Court needs to be followed by our Court. All right, you criticized Judge Maloney for finding the statute ambiguous, but six other federal judges have also found the statute to be ambiguous. Is that not true? That is correct. Okay, so we have seven total. That's not a small number of judges that have read the statute and found it ambiguous. It's not a small number. If I can address Judge Maloney's decision for a minute, there are a number... I can address the D.C. Circuit's opinion, the Tenth Circuit opinion, and also Judge White's dissent, I think. A lot of it focuses on dictionary definitions, and that's not the end of the ballgame. There are a lot of rules that the District Court... It's not the end of the ballgame, but whether the statute's ambiguous or not, I mean, you've got seven judges that say it is, and I don't think that should be lightly dismissed, that's all. There are a number of judges on the Tenth Circuit dissenting that say that it isn't. So there's... Oh, okay. It's ambiguous. You know it when you see it, like Justice Potter Stewart said about pornography, I think. When rules are passed with notice and comment, they are regarded as legislative, are they not? ATF has said both. The final rule says that bump stocks become machine guns as of the date of the final rule taking effect. In their briefing have said that they interpreted, or they reinterpreted, revised, expanded the statute such that it includes bump stocks. It seems to me that they sound like they're trying to make something that wasn't a crime before into a crime. They've also said that... Well, isn't changing a remedy part of making it legislative? Isn't that part of the delegation that enables notice and comment to be made public? I mean, there were 186,000 comments on this, so clearly there was notice and comment. And isn't that, and the nature of what they were proposing, the very thing that makes it fit within a legislative regulation? Not only, Your Honor, does there have to be a delegation, there has to be a recognition by the agency that they have been delegated some authority and actually rely on that authority to make a policy choice. And here I will read you from the government's opening brief. They say the statutory scheme does not provide the Attorney General the authority to engage in gap-filling interpretations of what qualifies as a machine gun. They don't think that they're engaging in gap-filling. They don't think they're making a policy decision. Can I ask a question? Well, one's a friendly observation on the Chevron-Lenaty point that I'm not aware of any of these cases in which someone ended up in jail based on a Chevron-deference interpretation by the relevant agency. So that would be the real holding. That would be where the rubber meets the road. And I'm not aware that's ever happened, although the government can tell me I'm wrong. But the less friendly observation is, it seems like such a goofy distinction that it's okay if Congress expressly says to the Attorney General, go find the drugs you feel like throwing on there. I mean, that's the ultimate in ambiguity. You have no idea what they're going to do. And Chevron is effectively an implied delegation doctrine. It's a delegation doctrine. It's just implied. It just seems very strange that the worst thing is okay, but wouldn't that cover the less worst thing? It seems like a very strange... I personally agree wholeheartedly that Congress should not be allowed to delegate any of its legislative authority to an administrative agency to define what constitutes a crime. But the point is, though, that I'm trying to make is that in those cases, it did. In this case, there's nothing even arguably implicit in any delegation. It's a useful distinction, even if it's not a distinction that leaves one happy. I guess I'll go with it. All right. Let's hear from the other side, and you'll get your rebuttals. Good afternoon. Chief Judge Sutton, I'm pleased to court. I'm Mark Stern for the government, and I'm happy to start wherever the court would like me to. One thing about the government's position on Chevron, I must say, is just so strange to me. This doctrine, the first 10 years of my career, everybody used it all the time. It was the most cited important case, and now no one talks about it. Two very distinct administrations are running to the hills not to use it. I just think it's a canon of interpretation fundamentally, and I guess I don't think that's for the government to decide. You can't say we forfeit the right to look at dictionaries or use the adjustum generis canon. I think if you don't think this is a canon of construction, you've got a serious problem on your hands because I don't understand why that doesn't prove this kind of regime, Chevron, violates the APA. The only way Chevron's consistent with the APA is that it is a canon of construction, that it does reflect what Congress wants because the U.S. Supreme Court told them how it would work. So, I don't know. I'm asking two questions. How can we ignore such a relevant canon, and two, you have to think of it as a canon of construction or I think you're admitting Chevron violates the APA. Well, speaking on big matters and sort of kind of blips. You know all of this. Yes. Sure. But I'm speaking sort of as me. Here's my, you know, since the Solicitor General didn't like sort of go, Mark, if Judge Sutton asks here your answers on these big questions, my understanding, Your Honor, would be this. Yes, it is a tool of construction. It has to be. I think that it does. I think it's like Kaiser where, you know, the court says that in some circumstances after you use other like tools of interpretation, you would give a agency's understanding of its regulation like various degrees of deference. I think that that's true for Chevron. I think it's true for me. These are all tools of construction. They are made by the Supreme Court. And as Your Honor rightly says, the government cannot tell a court when Chevron deference is appropriate. As in, we often do ask for Chevron deference and are told we're not entitled to it. But doesn't it follow if it's a canon of construction that it's just, it's part of our toolbox and it's not for us to say, well, let's wait and see if the lawyers invoked it. We're just trying to find the answer to the meaning of the statute. I agree with that, Your Honor. Now it's true. The Supreme Court has said that you don't, if nobody invokes it, the court doesn't have to get to it. But I would agree that if the court thinks that it's necessary or appropriate to do it, the government cannot stop it from doing so by saying that it's not invoking a canon of construction. What kind of deference do you think is appropriate in this case? I think that it's the kind of deference that the Supreme Court talked about in County of Maui where it says, in that case, the court notes that nobody was talking about Chevron deference. And it says, however, that doesn't mean that we don't look to an agency's expertise, familiarity, and so forth. So like Skidmore? Skidmore? Well, the court cited Meade in that case. But yes, Your Honor, that's, you know. I think that's what Justice Breyer might believe Meade is. Skidmore. Well, that's right. But, you know, but the point is that I think is what we thought was the appropriate level of deference. And I think it's in part because the like ATF's sort of like longstanding like classification procedures have generally not sort of like sort of gotten Chevron deference, nor when the United States brings the criminal process. Was I overstating when I said I wasn't sure there'd ever been a case where someone ended up in jail based on Chevron deference? Was I overstating? I have to admit I don't know the answer to that. I know that the Supreme, I mean, like the Supreme Court in the, I mean, we were just talking about the Babbitt case where the talks, where the court talks about how the rule of lenity. Yeah, but that was not, that was not a criminal enforcement case. That was a dual application case. That's why it came up. No, I agree with you, Your Honor. Presumably in securities regulation cases where the SEC has been interpreting terms that have both criminal and civil natures, there have been criminal prosecutions. Absolutely. And in O'Hagan, which, you know, cited in the briefs, the Supreme Court says we give the agencies like sort of regulation controlling weight in that kind of a case in which there was a prosecution based on an SEC reg. So I don't think that that's sort of a novel concept that you can have an agency given that authority. And indeed, counsel's argument isn't so much that you can't do it as that it hasn't happened here. And, you know, and that's a sort of interesting subject of debate. We do think that the Attorney General has broad rulemaking authority. ATF did not, and I can quote all the parts of the rule where ATF is making quite clear that it believes that the statute compels its interpretation. Can I ask you just to state clearly, so I thought the government, at least at earlier stages of this case, had expressly waived Chevron. And usually you think of a waiver as there's no exceptions. It means it doesn't apply. And so now you're suggesting we should apply Chevron despite your waiver. So what is, does the government actually have an official position on whether it wants Chevron to apply or not? Well, I think that our position is, yes, we've said that we were not asserting Chevron, like we've said that before, and like I'm not changing that. To the extent that I'm sort of giving it any nuance, it's that I agree that the government, I mean, waivers have whatever effect, also have whatever effect the court thinks that the waiver has. So the government can say we're not asserting Chevron. We think that that's something that a court should take into account. But again, you know, ultimately whatever canons of interpretation are going to be applied are for the court and not the government. So counsel, you agree the rule of lenity is a canon of interpretation we can take into account given that the government is not asserting Chevron here? Of course you can take it into account, Your Honor. But having taken it into account, the answer is, I think, that it clearly doesn't apply. How can you say that given that ATF itself had taken the position that gun owners is taking now as to the interpretation of the statute? How can you say there's not two different readings of the statute to which the rule of lenity would counsel in favor of the defendant's position? Well, I mean, there are lots of statutes that agencies have interpreted one way, as in like Chevron or, you know, state trial. But isn't that an admission by ATF itself that there are two different readings of the statute that are reasonable given that the agency itself has taken two different positions? And I don't think the ATF would say that either, in either case they would have said that their position was unreasonable. No, I disagree with that respectfully, Your Honor. I think that this regulation makes clear that ATF thinks its prior interpretation was not reasonable and that it was wrong. I mean, as in when, like, in responding to the comments, like, it's asked about, well, have you considered alternatives? And they go, no, this is compelled. There are no alternatives. And even when it's talking about getting deference, the agency starts by saying, we think that this is the clearly right interpretation. And it then says, however, like, at a minimum, it would be a reasonable interpretation that should be upheld. But the agency is, says over and over again in the rule, not that this was, and it expressly actually talks about Chevron and says, look, this isn't like Chevron, which involved a lot of different choices, including policy considerations. This is straight out, we think this is what the text means. So that, there's only one permissible reading of the statute? That's the government's position now? Not that the statute's susceptible to two different readings and we should defer to you, but that there's only one permissible reading? So the reading you gave for the last 20 years was just wrong? Well, we do think it's wrong. And again, it's, you know, lots of wrong, it's not when you come up with a wrong interpretation, it doesn't mean, you know, that you were sort of out to lunch. I mean, the Supreme Court is always, you know, and this Court is always correcting the wrong understandings of counsel, district courts, and courts of appeals. Nobody thinks that, like, therefore, they were just. Right. But you're not saying it's the, your way is the only way to read the statute? We think it's the only correct way to read the statute. And we do think that at a minimum, some form of need deference would be appropriate. So what about in ethic systems and other cases where the courts talked about the government being of two minds, and so we shouldn't pay much heed to what you say? To my, excuse me. Speaking of two minds, so where you switch positions or take inconsistent positions over the years? Oh, I mean, I think that the court has been very clear that as long as the government fully explains itself, when it changes its position, that the court will give it, like, in the appropriate case, will give it Chevron deference. I mean, it's the question is, did the court, did the agency explain itself well? Can you tell what the, like, can you look at this and say the agency's got it right or, you know, got it right with whatever thumb on the scale? But here we think that we've just got it right, period. I assume you agree with your friend on the other side that they gave an accurate description of what a bump stock does. In other words, if all you do is pull the trigger and don't touch any other part of the gun on a semi-automatic with a bump stock, only one trigger will come out, non-mechanical. I think I agree with it. I mean, what happens with the bump stocks, it's had to go fire them to make sure I understood what a bump stock was, is you just hold it like this, and yes, you have to press forward whereas on a prototypical machine gun, you're pressing in with the trigger. This way, your trigger, this finger isn't putting any additional force on. That's putting the force. But you agree each function of the trigger with a semi-automatic causes one bullet to fire, whereas one function with an automatic causes multiple bullets to fire. It depends on, I want to be clear what we mean by function. And how function fits in with the rest of the statutory definition. We're talking about a single function that makes the gun fire automatically. Those are things that have to be read together. What Congress was primarily concerned about, and it's actually the long colloquy with the president of the National Rifle Association is very instructive. We caught a little bit of it, but there's a lot more, and I think it really helps to get the feel of what the real concern was back in 1934. But the point is, you're looking to a single function, and in Aikens, the 11th Circuit refers to that also as an application of the trigger. And does a single application thereby sort of let loose, initiate a sequence of automatic firing that you don't have to keep going like this with your finger or like whatever other trigger you have. That's what everybody was getting at. And what every circuit to look at this has said is, look, I'm not going to let people fool around with what the definitions of triggers are in order to sort of get, like, in order to sort of... Would a rubber band on the trigger be illegal on a semi-automatic rifle if it helped you fire that way? No. I mean, helping you fire, like, as long as what you keep doing is... Well, the rubber band pulls it back. No. If the rubber band, like, if you have to keep doing things, like, whether it's... You have to keep... I'm sorry to interrupt you, but you have to keep forward pressure on the barrel in order for the trigger to come back to be reactivated to fire the next shot. Right. You have to, like... But what you don't do is to keep pressing or, like, giving a pull to anything. There's just... Just in the same way you have to hold in this way and the bump stop, you hold out that way. Doesn't that make it not automatic? No. It fires very automatically. No, but you seem to be focused on human inputs. So there's one human input pulling the trigger multiple times, but then there's another one, continuous forward pressure. I'm sorry. I must not have been clear. No, there are multiple. But I'm asking why aren't there if you have to keep exerting continuous forward pressure? If I were to release the forward pressure, it wouldn't fire, right? That's right. Could you put a block there? Yes. You could put, like, a rod or anything. It's like all your finger is holding absolutely steady on it. I don't mean your finger. I mean, could you put a device there that would prevent the gun or the rifle from coming back so that there's something other than your arm that is creating the mechanical pressure keeping it forward? I guess, and I'm going to get out of my depth really fast here, but I think that would be perhaps the accurate description of the Aikens accelerator because with the Aikens accelerator, the difference is that with the Aikens accelerator, it had a spring function so that you didn't have to keep, like, exerting the forward movement. But aren't you talking about single function of the trigger finger? You're not talking about single function of the trigger. You're talking about your finger. I mean, you're adding a word there, right? No. With respect, I disagree very strongly with that, Your Honor. What we're talking about is a one movement of whatever you call the trigger, right? But the trigger is reactivating. It reactivates each time to fire the next bullet. So it's doing more. You're talking about the finger having to do something, whereas it's a single function of the trigger. If one thought that the single, that the thing that counted was whether the physical trigger is moving back and forth and that was the end of the story, that would be right, but that's not what any court has thought. I mean, go back to the Fifth Circuit's decision in camp. There you had an electronic, like, I can't even picture this. It's some sort of electronic fishing reel that gets set up with the gun and, like, so you start it and then as the Fifth Circuit's description makes clear, the original, like the trigger in the gun, keeps moving back and forth. Because that case involved what is the trigger, and the court thought a different thing could be the trigger. There was a button or something. Here, just to clarify, you concede that the trigger within the meaning of the statute is still the trigger on the AR-15. Yeah, we're not disputing that. I don't understand why that case helps you at all because the entire point of the decision was what actually qualifies as the trigger, and the court said that something else other than the thing on the gun could qualify. So if you press a button and it sends an electronic signal and you keep pressing down, it's just like a machine gun because your finger just keeps staying on this trigger, but the trigger on the gun is a separate trigger. That's not, like, I mean, what Your Honor's description is accurate, but I think what the Fifth Circuit was also really getting at was the fact that you could set the, and again, this is why it's so important to come back to the connection with automatic. What the statute is concerned about is what sets in motion an automatic sequence that will then continue. Can I ask you just real quick, do you have the statutory language in front of you? It says the term machine gun means any weapon which shoots is designed to shoot or can be readily restored to shoot automatically, and I'm curious about what the readily restored to shoot. If a bump stop with an AR-15 qualifies as a machine gun, so a bump stop plus an AR-15, is it the government's position then that an AR-15, a regular semi-automatic weapon, could be readily restored to shoot automatically more than one shot? I think the answer is no, but I just don't know. But do you understand that under your position, the government through a regulation could ban all AR-15s in this country? I have no reason to, if Your Honor wants, I can get back to you with that. I mean, I really, the thing about the readily shoot. There's been a lot of constitutional litigation on state bans on AR-15s, and you're suggesting that you can potentially engage in a pretty significant ban on guns in this country. Your Honor, I want to be clear, I did not suggest that at all. I don't want to, I really don't want to see anybody saying government counsel suggested. To answer to his question, I mean, it's a pretty good point. He's relying on the statute, and it can be easily restored with a bump stop. So what is the answer? I don't, look, the statute, like, there are lots of things that, I mean, that's not, I mean, I can get back to the court with, like, what would hopefully be a much clearer explanation of what that provision is doing, but it is not, like, I think that the idea is that if you make a change to a gun so that, like, well, right now it doesn't do it, but I can just then, like, restore it quickly to where it was, like, then that could be within the statute. Actually, I just don't know the answer to this question. How quickly can you just put a bump stop on an AR-15? Your Honor, I don't know, and I really, I feel very uncomfortable by talking about a provision that I have not looked into or discussed. If you have a eureka moment in the next couple days, let us know. I will try to have a eureka moment. But I don't understand, then, if, when I have the bump stop on the gun, there are multiple modes of using it that are not automatic, right? So what makes it, I don't understand, it's just the one time that I can do it, when I have the exact pressure and fire it the right way, it's a machine gun? But what if I never use it that way? Why is that any different than a gun that doesn't have a bump stop on it? I mean, you could have a machine gun that also can be fired not as a machine gun, and that doesn't make it not a machine gun, right? I mean, like, the fact that a gun is capable of being fired, like, by multiple movements of the trigger, like, you know, many guns, you can pull the switch, now it's, like, shooting. But capable without any physical change. So if I have a regular AR-15, it's not capable unless I put the bump stop on it, at which point it becomes a machine gun, even though it functions the same way unless I'm using it in a particular way. I mean, if the gun doesn't have, I mean, what the statutory definition was expanded in 1968 to cover parts in order to get at things that can make a gun that would not otherwise be a machine gun a machine gun. So I don't think that there's, like, any argument that approaching the bump stop in this way, like, is well within what everyone has always understood the statute to mean. So is the bump stop added to a regular submachine gun? Yeah, it's added. Right, and then this allows... So it's the bump stop that is banned, not the submachine gun. I don't know about the word submachine gun, but, I mean, any gun... Anti-automatic. Right, and, again, it's easy for me to get out of my depth on this technical... That's the second part of the definition, right? That the coverage here is for items that are for use in converting a weapon into a machine gun. That's correct, Your Honor. So that's the key there. It's what is used to convert it. And if you have put something on it that will convert it, it is a machine gun, no matter how you use it. That's correct, Your Honor. I wish I had given that answer a moment ago. But does the statute have anything in it about parts being banned? Yes. Doesn't the statute talk about the machine gun itself, not something that could be added to a gun? No, I'm almost sure that the... I don't have that part of the language in front of me, but I'm fairly sure the 1968 amendments specifically added on parts to make... which hadn't been there earlier. If you have a machine gun that's been taken apart, you could be liable. I thought that was what it meant. Do you think it means something that just a part itself that could be added to a machine gun or to make something a machine gun would be banned by the statute? Yes. Okay. Thank you. Thank you very much. Mr. Olson, you have your rebuttal. Your Honor, the only way the government wins this case is with a finding of ambiguity. They have taken a word that they do not like out of the statute and replaced it with a different word. There is no way to read the statute correctly by replacing language that Congress enacted and going with ATF's preferred language. So you're saying if we find it ambiguous, the government wins? No. I'm saying that the only way the government could win is if the court finds the statute ambiguous. If the court finds the statute ambiguous, which it's not, even if the court found that Chevron applies in a criminal case, which it does not, even if a delegation is found somewhere in the statute and there is none, even if ATF relied on that delegation and they did not, they expressly did not, as I read from their brief earlier, and even if the rule of lenity doesn't apply and it should not, then you still have to get to another elephant in the room, and that is the Supreme Court's Holly Frontier decision, which was issued just a couple of months ago. It was actually issued about an hour and a half before this court granted en banc review and we were preparing our 28-J letter, and Judge White in her dissent in the panel said that Chevron could not be waived but that the Supreme Court had not definitively ruled on that question. A couple of months ago it did. Justice Gorsuch, writing for the court in Holly Frontier, 141 Supreme Court 2172, said, EPA asked the Court of Appeals to defer. Although the refineries repeat that ask here, the government does not. We therefore decline to consider whether any deference might be due its regulation. The Supreme Court now has definitively spoken and said if the government waived Chevron, which it just did, they do not get. Isn't that statement dicta for one? Isn't it dicta, Your Honor? The Supreme Court in Holly Frontier said the language of the statute was unambiguous and therefore you wouldn't even go to Chevron. And the ruling, the holding there was the statute's plain text was unambiguous and the Chevron argument need not be addressed here because guess what? We have an unambiguous statute. I think that's critical to their decision. It led them to the road that they wound up on. Doesn't our court say we have to follow Supreme Court dicta whether it's dicta or not? I thought one of my colleagues said that. Yeah, dicta and then there's Supreme Court dicta as they say, I guess. And not only does this How do you get around the problem of this is a rule that was clearly passed invoking Chevron? That's the way it was ruled. So how do you get around the problem of administrative agencies not revoking a rule with notice and comment, which is what they have to do, and just simply taking a litigating position that says, oh, never mind. I don't agree with your premise, Your Honor, that this I can't hear you. I don't agree that this was a rule which clearly invoked Chevron. The only mention of Chevron in the final rule is about a paragraph and a half, and it's a response to a comment received in the advance notice of proposed rulemaking. And ATF says, they say you would not be entitled to Chevron deference. ATF says we're not invoking Chevron deference. We don't want Chevron deference. But if we did, then we'd be entitled to it. I'm talking about when the rule was passed. That's what the final rule says, Your Honor. It's that we don't want Chevron deference, but if it applied, we would get it. But we don't think it applies, and we don't think the statute's ambiguous. I see that my time has expired. Okay. Thank you very much, Mr. Olson. Thank you, Mr. Sturm. We really appreciate your helpful briefs and, above all, oral argument and answering our questions, which we're always grateful for. Both of you, the case will be submitted. The clerk may adjourn court. Court is adjourned.